IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| **NATIONWIDE MUTUAL INSURANCE COMPANY,** | : : : : | Case No. 2:10-CV-0921 |
| **Plaintiff,** | : : | JUDGE ALGENON L. MARBLEY |
| v. | : : | MAGISTRATE JUDGE KING |
| **JAMES EDWARD MCRAE,** | : : |  |
| **Defendants.** | : |  |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Default Judgment (Dkt. 11). Plaintiff requests an award of damages, a permanent injunction, and attorneys' fees and costs. For the reasons stated below, the Court **GRANTS** Plaintiff's motion.

**II. BACKGROUND**

**A. Factual Background**

On March 30, 2005, James E. McRae ("McRae") signed an Independent Contactor Agent's Agreement ("IC Agreement") with Nationwide Mutual Insurance Company ("Nationwide"). According to the IC Agreement, "All . . . property furnished to [McRae] by [Nationwide] or on behalf of [Nationwide] and all copies thereof, shall remain the property of [Nationwide] and shall be returned to [Nationwide] in good condition upon any cancellation of this agreement." IC Agreement § 1. Nationwide "grant[ed] to [McRae] a personal, non-exclusive, non-transferable, limited license to use the trademarks, service marks, and names ('Marks') of [Nationwide] on or in connection with the business conducted pursuant to this

1

Agreement." IC Agreement § 6. McRae acknowledged that "all right, title, and interest in" the Marks belonged to Nationwide, and that any use he made of the Marks conferred "no rights or benefits or ownership" upon him. IC Agreement § 10. When either party terminated the Agreement, McRae was obligated to return certain items to Nationwide and destroy or dispense with all items or material bearing Nationwide's Marks. IC Agreement § 10. Finally, the Agreement provided that if Nationwide brought suit to enforce the Agreement's provisions and prevailed, McRae was responsible for Nationwide's fees. IC Agreement § 25.

Nationwide contends that McRae is in violation of the terms of the IC Agreement. In its Complaint, Nationwide alleges that a dispute arose between it and McRae, and the two parties ended their professional relationship in September 2009. After this termination, McRae was no longer considered an authorized Nationwide insurance agent. Nationwide alleges that McRae has continued to maintain Nationwide signage, which contains registered trademarks in violation of the IC Agreement, in derogation of its continued requests that the use be discontinued. In particular, McRae has maintained signage directly above the front door of his place of business as well as its parking lot. As Nationwide has used its Marks nationally for more than fifty years, it believes that McRae's continued use of the trademarks is likely to cause confusion among customers.

### B. Procedural Background

In its Complaint, Nationwide asserts four claims: (1) breach of contract; (2) federal unfair competition in violation of the Lanham Act; (3) trademark infringement; and (4) state unfair competition in violation of the Ohio Deceptive Trade Practices Act. Nationwide seeks injunctive relief in Count Five of the Complaint, as well as compensatory damages, disgorgement of profits, treble damages, and attorneys' fees.

The Complaint was personally served on McRae on October 14, 2010 and the return of service was filed with the Clerk of the Court (Dkt. 4). McRae never answered the Complaint. On November 23, 2010, the Clerk of Courts for the Southern District of Ohio entered an entry of default against McRae pursuant to Federal Rule of Civil Procedure 55(a) (Dkt. 7). On December 20, 2010, Nationwide filed this motion for default judgment (Dkt. 11).

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(a)(1)(A) states that a defendant must answer a complaint against them within twenty-one days, unless the defendant responded timely to a request for waiver of service which entitles them to an extended length of time to respond. Fed. R. Civ. P. 12(a)(1)(A). Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The Clerk made an entry of default in this case on November 23, 2010 after an excess of twenty-one days had passed without any answer, appearance, or responsive pleading having been filed or served by the Defendant (Dkt. 7). This entry of default has the effect of admitting all the facts alleged against the non-responsive party (McRae), with the exceptions of allegations made in relation to the amount of damages owed. Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110-11 (6th Cir. 1995).

### IV. LAW AND ANALYSIS

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may enter a default judgment against an defaulting party. Fed. R. Civ. P. 55(b)(2). As McRae has failed to appear in this lawsuit, he is a defaulting party. It is thus appropriate for this court to grant the Plaintiff's motion for default judgment. In granting the motion, however, this Court must review

3

the amount of damages properly owed and analyze whether it is appropriate to grant Nationwide's request for attorneys' fees and injunctive relief. <u>Microsoft Corp.</u>, 490 F. Supp. 2d 878.

### A. Liability

### 1. Breach of Contract

As described above, the IC Agreement establishes that any property, including signage and Marks, Nationwide provides to those it contracts with shall be returned to the company or destroyed when the professional relationship between the parties comes to an end. In addition, the contract clearly states that Nationwide retains title and interest in the Marks at all times.

Nationwide's complaint alleges that Defendant McRae violated the agreement when he failed to remove and dispose of Nationwide signage at his Westerville, Ohio business. Taking the above statements as true, the Court finds that McRae breached his contract with Nationwide.

### 2. Lanham Act

Nationwide brings two claims under the Lanham Act. The first claim is for false designation of origin, false or misleading description, or false or misleading representation in violation of 15 U.S.C. § 1125(a).[1] The second claim is for is for federal trademark[2] infringement

---

[1] Section 1125(a) of the Lanham Act provides: (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

    (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

in violation of 15 U.S.C. § 1114.[3] The Sixth Circuit uses the same test for false designation of origin and trademark infringement: the likelihood of confusion between the two marks. <u>Audi AG v. D'Amato</u>, 469 F.3d 534, 542 (6th Cir. 2006).

In its Complaint, Nationwide alleges that McRae continues to use intentionally Nationwide materials in connection to his business. In so doing, he is falsely representing that his insurance related products and services originate with, are sponsored, underwritten, or licensed by Nationwide. This use, Nationwide states, will create a likelihood of confusion that Nationwide is endorsing McRae's products among insurance customers, including current and

---

       shall be liable in a civil action by any person who believes that he or she is or is
       likely to be damaged by such act.

[2] The Lanham Act defines "trademark" as including: any word, name, symbol, or device, or any combination thereof—
       (1) used by a person, or
       (2) which a person has a bona fide intention to use in commerce and applies to register
           on the principal register established by this chapter,
to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown. 15 U.S.C. § 1127.

[3] Section 1114 of the Lanham Act provides: (1) Any person who shall, without the consent of the registrant—
       (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
       (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

former policyholders. Nationwide contends that its consumer goodwill is of "enormous value," and that it will suffer "irreparable harm" if McRae continues to use its Marks. In addition, Nationwide alleges that McRae's use of the Marks and signage is intended to and will have the effect of illegitimately bequeathing on McRae the benefits that a business partnership with Nationwide would grant him. Deeming these allegations as admitted, the Court finds that Nationwide has infringed on trademark No. 854,888 and trademark No. 2,371,088. The Court also finds that McRae's acts constituted false designation of origin and false or misleading representation in violation of the Lanham Act.

Further, Nationwide asserts that McRae willfully infringed Nationwide's trademarks. As this Court has noted, if a Defendant has knowledge that his or her acts are infringing on the Plaintiff's trademark, then the Lanham Act defines the infringement as willful, and enhanced statutory damages are allowed. Microsoft Corp., 490 F. Supp. 2d at 880. When a defendant has been notified of their infringement, yet continues to act in violation of the Lanham Act, its actions are considered willful. Id. Here, because McRae continued to use Plaintiff's trademarks after he was sent a number of letters stating that his continued use of the Plaintiff's trademarked materials were unlawful, McRae's actions are considered willful under the Lanham Act.

### 3. Ohio Deceptive Trade Practices Act

As the Sixth Circuit has noted, the same analysis that applies to the Lanham Act applies to the Ohio Deceptive Trade Practices Act, O.R.C. § 4165.01 *et seq*. See e.g., Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc., 280 F.3d 619, 626 n.2 (6th Cir. 2002); Victoria's Secret Stores v. Artco Equipment Co., Inc., 194 F. Supp. 2d 704, 724 n.8 (S.D. Ohio 2002). Accordingly, the Court finds that the Defendant's actions violated the Ohio Deceptive Trade Practices Act.

## B. Relief

### 1. Statutory Damages

Nationwide seeks both a monetary award of damages and injunctive relief.  In this case, Nationwide has elected to receive the statutory damages that are available under the Lanham Act.  15 U.S.C. § 1117(c).  Pursuant to Section 1117(c), a successful plaintiff may recover not less than $1,000 or not more than $200,000 per instance of trademark infringed, regardless of willfulness, and enhanced up to $2,000,000 per mark if the infringement is willful.  15 U.S.C. § 1117(c).  In determining the amount of statutory damages, courts have considered several factors, including: "the defendant's profits, the plaintiff's lost profits, the defendant's willfulness, the size of the defendant's counterfeiting operation, the defendant's efforts to mislead and conceal, and the need to deter the defendant and others."  Philip Morris USA Inc. v. Tammy's Smoke Shop, Inc., 726 F.Supp.2d 223, 224 (E.D.N.Y. 2010).

In applying these factors, neither the defendant's profits nor the plaintiff's lost profits can be determined.  As discussed above, defendant's conduct meets the legal standard for willfulness.  But as to concealment, the defendant obtained the Marks legally through an agreement with Nationwide.  After the contract terminated, the evidence before the Court indicates that McRae took steps to mitigate the potential of the Marks to confuse.  He covered up the "wide" in "Nationwide" so that it read "Nation," and covered up the easily-recognizable "Nationwide" square with images saying "Representing Bristol West Insurance Group, Foremost Insurance Group."  Additionally, the defendant is a small independent contractor; the plaintiff is one of the largest insurance companies in the world.

Nationwide relies on Microsoft v. MeGee, 490 F.Supp.2d 874, (S.D. Ohio. 2007), to argue that, like the plaintiff in that case, it should receive $100,000 for each instance of

infringement, for a total of $200,000. The factual scenario in Microsoft, however, differs significantly from the one before the Court. Here, McRae obtained the Marks through a legal agreement, and took steps after the agreement terminated to mitigate the potential for confusion. By contrast, the plaintiff in Microsoft illegally used Microsoft trademarks and copyrights on software, and actively employed them to sell his products. *Id.* at 879-80. This mimicking of Microsoft products had a higher probability of causing customer confusion than the use at issue in this case.

The heart of any trademark infringement action is the potential to confuse the consumer. While the Court certainly does not condone McRae's actions, the infringement in the case sub judice is considerably less onerous than the conduct in Microsoft. Accordingly, a damage award of $100,000 for each instance of infringement is inappropriate here. Upon consideration of all of the relevant factors, the Court finds that an award of $18,750 for each of the two trademarks infringed, for a total of $37,500,[4] is sufficient to compensate Nationwide, punish McRae, and deter would-be infringers.

### 2. Injunctive Relief

The Lanham Act, as well as Ohio law, provides for injunctive relief. 15 U.S.C. § 1116(a). Nationwide requests a permanent injunction. In order to obtain this form of relief, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity

---

[4] Pursuant to the IC Agreement, McRae should have removed the signs within ten days of September 21, 2009. Nationwide filed its complaint on October 13, 2010. This Court awards Nationwide $1,500 for each month McRae was in violation of the agreement until Nationwide filed the complaint, a period of twelve and a half months.

is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Sixth Circuit and the Southern District of Ohio have applied this test when considering a request for a permanent injunction in trademark infringement actions. See e.g., D'Amato, 469 F.3d at 550; McGee, 490 F. Supp. 2d at 882.

As to the first factor, the Sixth Circuit has held that "no particular finding of . . . irreparable harm is necessary for injunctive relief in trademark infringement . . . cases." Circuit City Stores, Inc. v. CarMax, Inc., 165 F.3d 1047, 1056 (6th Cir. 1999). Rather, irreparable injury may be inferred "when there is a likelihood of confusion or possible risk to [the Plaintiff's] reputation." Id. (internal quotations omitted); Wynn Oil Co. v. Am. Way Serv. Corp., 943 F.2d 595, 608 (6th Cir. 1991). Because this Court has found that current and future customers may incorrectly assume that McRae's services are affiliated with the services provided by Nationwide, the Court holds that Nationwide has proved irreparable injury in its request for injunctive relief.

The second factor, that no other available legal remedies will adequately compensate for the injury, is also satisfied in this case. Because McRae has continued its infringement of the Plaintiff's trademarks after the termination of the contract and after the Plaintiff sent letters and filed a lawsuit demanding that the Defendant no longer use the infringing materials, the potential for future harm is virtually certain and an injunction is likely the only adequate remedy to prevent this future harm. See e.g., D'Amato, 469 F.3d at 550; McGee, 490 F. Supp. 2d at 882-83.

The third requirement that must be met before an injunction may be granted requires this Court to consider the balance of hardships between the parties and determine whether an

equitable remedy is justified. Here, as in <u>McGee</u>, the Court finds that "a permanent injunction is warranted because there is no harm to the Defendant inasmuch as an injunction will merely require Defendant to comply with the . . . Lanham Act" and with the terms of the Agreement he signed. <u>McGee</u>, 490 F. Supp. 2d at 883. Failing to issue a permanent injunction, however, could damage Nationwide's professional reputation and have an impact on its sales.

As to fourth and final requirement, the Court finds that the issuance of a permanent injunction would not disserve, but rather would advance, the public interest. As the Sixth Circuit has noted, there are two fundamental goals of trademark protection laws: to prevent "deception and consumer confusion, and, more fundamentally, [to] protect[] . . . property interests in trademarks." <u>Ameritech, Inc. v. Am. Info. Technologies Corp.</u>, 811 F.2d 960, 964 (6th Cir. 1987). These goals of trademark law are considered when evaluating if the public interest would be advanced or harmed by the issuance of an injunction. See <u>Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.</u>, 453 F.3d 377, 383 (6th Cir. 2006); <u>McGee</u>, 490 F. Supp. 2d at 883. Because the Court finds that the two goals of trademark law would be advanced here, and that the issuance of a permanent injunction would help curb or prevent the public from incorrectly associating the services McRae provides with those provided by Nationwide, the Court finds that the fourth factor weighs in favor of issuing a permanent injunction. Accordingly, as all four factors favor the issuance of a permanent injunction, this Court grants Plaintiff Nationwide's request.

### 3. Attorneys' Fees and Costs

The Sixth Circuit generally follows the American Rule regarding attorneys' fees. Under that rule, prevailing parties are not awarded attorneys' fees in the absence of explicit statutory authority or an enforceable contract. <u>McQueary v. Conway</u>, 614 F.3d 591, 596-97 (6th Cir.

2010); In re Foote Memorial Hospital/PCIS Litigation E.D.S. Corp. v. W.A. Foote Memorial Hospital, 25 F.3d 406, 411 (6th Cir. 1994).  Here, the IC Agreement entered into by the parties provided, in paragraph 25, that if Nationwide brought, and was the prevailing party in an action against McRae "to enforce any of the provisions of [the IC] Agreement or on account of any damages [it] sustained," McRae was to pay Nationwide "such reasonable fees as are permitted by the statute and/or fixed by the Court."  The Court finds that Nationwide is the prevailing party in this action, and thus concludes that Nationwide is entitled to reasonable attorneys' fees and costs.[5]

Nationwide has provided the Court with an itemized statement of the fees and costs incurred in this matter.  The Court finds these attorney fees and costs reasonable, and orders an award in the amount of $16,733.06.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a default judgment, damages, and a permanent injunction is **GRANTED**.  Defendant is **ORDERED** to pay $37,500 in damages, and attorneys' fees and costs totaling $16,733.06.  This award is subject to post-judgment interest at the federal statutory rate.  A permanent injunction is also hereby **ORDERED** against the Defendant's continued use of the Plaintiff's Marks.

**IT IS SO ORDERED.**

                                                  s/Algenon L. Marbley
                                                  **ALGENON L. MARBLEY**
                                                  **UNITED STATES DISTRICT JUDGE**

**DATED: June 7, 2011**

---

[5] Additionally, the Lanham Act authorizes the Court to award attorneys' fees in exceptional cases. 15 U.S.C. § 1117(a).  The Court makes no findings on the "exceptional" nature of this case, and finds that the terms of the Agreement authorize an award of attorneys' fees.